DANXFB, J.
The first question presented for our consideration is, whether the proceedings in this case were properly commenced in the county of Cabell; and I experience no difficulty in answering it in the negative.
The first section of ch. 106 of the Code, p. 464, provides, that where any person conceives himself unlawfully detained as a slave, he may petition the Circuit court or court of the county or corporation in which he may be detained, for leave to sue for his freedom, or he may complain thereof to a justice. The second section provides that if the complaint be made to a justice, he shall, by precept in writing, give the corn- *688 plainant in charge to the proper officer, to be produced before the Circuit court or court of the county or corporation, (as the complainant may elect,) at the next term thereof; and in the mean time to be safely kept at the expense of the person claiming to be the owner; and shall cause such person to be notified thereof. And the third section provides that if the person claiming to be the owner, or some one for him, will enter into bond, approved by the officer having the complainant in charge, in a penalty equal to double the value of the ^complainant, supposing him to be a slave, conditioned to have him forthcoming before the said court at the next term thereof, such officer shall deliver to him the complainant.
The section of the Code of 1819, p. 481, corresponding with the first section just cited, requires the complaint tobe made “to a magistrate out of court, or to the Circuit court for the county, or to the court of the county or corporation where the complainant shall reside, and not elsewhere. ’ ’
We have no report of any decision in our court ascertaining the sense in which the term “residence” is used in the act of 1819. But I apprehend that it could never have been in the contemplation of the legislature, that, in controversies about jurisdiction in such cases, the will or choice of the complainant could be referred to as having any influence in solving questions as to his residence.
It is not necessary to enquire whether the Code of 1819, in fixing the jurisdiction by the residence of the complainant, had reference to his temporary or to his permanent residence. It could hardly have been the meaning of the law that such residence could be acquired against the consent of the owner or person claiming to stand in the relation of master. The very nature of the subject excludes the idea that it could have been competent for a person detained' as a slave and having a residence in one county, appointed and fixed by his master or claimant, by running away into another county, to acquire a residence in the latter, so as to give to its courts jurisdiction of a suit brought by the runaway, for his freedom. And the aspect of the question would not be materially changed by supposing a temporary change of the residence of the complainant, effected by means of process issuing in a proceeding set on foot by himself, constraining the master to carry him away from the place of residence *he had selected for him in one county into another county, to appear before a legal tribunal held in the latter.
The same course of reasoning, it seems to me, holds good in determining the place in which the complainant, under the first section of the present Code, is to be regarded as detained in slavery. As the relation of master and slave is, from its very nature, incapable of suspension, it may, in some sense, be said that a person held in slavery is detained as a slave in every place in which he may be, for any period of time, however short, during the existence of the relation. But as under the former laws it was not intended that the complainant should have any voice or mind in the selection of his residence, so under the present law it is equally clear, I think, that he cannot be allowed, by any act of his, doné without the consent of his owner, or by any act of the officers of the law, done at his instance, so to change the place in which he is detained as to transfer, from the courts of one county to those of another, jurisdiction of a petition for leave to sue for his freedom. There is show of reason in the argument that the legislature, in ascertaining the jurisdiction of such suits by the place of the detention, instead of the place of the residence of the complainant, designed to get rid of serious questions which might otherwise arise as to the nature of the residence, as whether casual or permanent, which should determine the jurisdiction, and to disembarrass the remedy of those impediments which the owner or claimant • seeking to evade a suit, by running off the complainant, might place in the way, by objecting to a suit brought in any county through which he might be passing, that it was not brought in the county in which the complainant resided. Be this as it may, it is, I think, obvious that the place of the jurisdiction is that in which the owner chooses to exercise his ^rights as master; that in which he willingly detains the complainant, and not that in which the presence of both the- owner and complainant is brought about by the acts of the latter against the will and consent of the former.
With-these views of the law, it is only necessary to refer to the affidavit made by the plaintiff in error, William Ratcliff, as the foundation for the rule to show cause why the suit should not be dismissed, (the facts stated wherein were admitted by the complainants to be true,) to show that the courts of Cabell county had no right to take jurisdiction of the case. The affiant states in his affidavit, that he claimed the complainants as his slaves ; that at the time of the commencement of the suit, he was and still is a resident and citizen of the county of Wayne, and not of the county of Cabell; that he held and -detained the complainants in his custody at his residence in the county of Wayne alone, until he was commanded by writ of habeas corpus to bring them to the county of Cabell; that in obedience to the commands of said writ, he did bring them to the said county of Cabell; that said writ was returnable on the 12th day of March 1851, and that their petition for leave to sue in. forma pauperis is dated the 10th of March 1851, two days before the return day of said writ; that the warrant of the justice authorizing them to do so, is dated on the 12th day of March, the return day of the writ, and the bond of the affiant for their forthcoming and delivery to answer the judgments of the court, dated the same day: And that but for the issuing of said writ of habeas corpus he *689 would not have had the plaintiffs in the county of Cabell in custody or otherwise.
It is thus seen that the detention of the complainants b3r Ratcliff in the county of Cabell, was involuntary, and constrained and effected by legal proceeding's set on foot by the complainants themselves; *and that the case is brought fully within the influence of the views which I have presented in respect to the jurisdiction.
If, however, I could doubt as to the correctness of these views as furnishing a rule of universal application, and could be induced to believe that an exception might be made in a case where it appeared that a petition for a habeas corpus had been resorted to by the complainant in good faith as a means of trying his right to freedom, and not as a means of effecting a change of jurisdiction, and had been afterwards in like good faith, upon further advice and reflection, substituted by the proceedings pointed out in the statute, taken in the county to which the complainants and the owner might be brought by virtue of the habeas corpus, I should still hold that in this case there is not only nothing to justify such an exception, but that, on the contrary, the case is one calling for the most rigid application of the rule. The ■petition for the habeas corpus is dated and allowed by the judge on the 8th of March, and as has been before stated, was returnable on the 12th. Yet we find that the petition for leave to sue in forma pauperis, is ■dated on the 10th, before any return was made or could have been made to the writ of habeas corpus. When the petition was presented to the justice does not appear, but his warrant is issued on the 12th.
On the rule to show cause why the suit should not be dismissed, the complainants, whilst admitting the truth of Ratcliff’s statement that he had brought them into the county of Cabell in obedience to the writ of habeas corpus alone, offer no explanation, by affidavit or otherwise, of their conduct in first procuring the habeas corpus, ■and then substituting the proceedings upon it by a regular suit so soon as they had thus ■effected a change in the place of their detention. Thus leaving their proceedings exposed, without explanation, to all *the inferences of having originated in an unfair effort to change the jurisdiction to which they are, on their face, so plainly obnoxious.
The facts of the case- unexplained do, I think, furnish ample warrant for the conclusion, that in presenting the petition for a habeas corpus the complainants did not, bona fide, seek to resort to it as a proper method of trying the right to freedom, (an office' which, in such a case, it could not properly perform,) but that they took this course as a device by which they might be enabled to shift the scene of the trial of the regular suit they designed bringing, from the county of Wayne to the county of -Cabell.
To sustain the jurisdiction of the Circuit court of Cabell under the circumstances of this case, would be to countenance a course which might operate in some instances most unjustly and oppressively on such as may happen to hold in their possession persons of color claiming a right to freedom. Under such a practice the defendant may not onljr be subjected to the alternative of finding security in a county remote from the residence of himself and his friends, or to surrendering his property to the sheriff, but compelled to try his right in a place where it may be jeoparded by the difficulty of procuring the full attendance of his witnesses ; and where he must necessarily encounter greater trouble and expense in making his defense than he would be exposed to if the trial were had within the jurisdiction contemplated by the law.
It remains to be considered whether the objection to the jurisdiction was taken in a proper mode, and also whether there is any thing in the record to show that the plaintiffs in error have waived or lost their right to make the objection.
By a reference to the 4th, 5th and 6th sections of chapter 106 of the Code, already cited, it will be seen that the proceedings at rules, the declaration and *pleadings that were provided under the former law, are dispensed with. The court to whom the petition is presented is required, in the sections just mentioned, to assign the petitioner counsel, whose duty it is made to file with the clerk a statement in writing of the material facts of the case, with his opinion thereon; and unless it appear manifest therefrom that the suit ought not to be prosecuted, the court is further required to cause the person claiming to be the owner, to be summoned to answer the petitioner; and is to proceed at the next term to the trial of the case, without regard to its place on the docket, having first impaneled a jury, which, without the formality of pleading, is to try whether the petitioner is free or not.
It is hardly to be supposed that the legislature, in thus dispensing with the rules, at which pleas to the jurisdiction in other cases, are usually entered, and also with all formality of pleading in court, designed that questions of jurisdiction should be litigated before the jury without notice to the petitioner; and it is equally hard to suppose that they designed to debar the defendants to such action, of the right to insist, in some mode, on the want of jurisdiction in the court before which they are cited to appear. In this state of the legislation on the subject, a rule upon the petitioner to show cause why the suit should not be dismissed for want of jurisdiction, founded on an affidavit of the facts on which the defendants mean to rely, seems to me to furnish as fair and convenient a mode of bringing said questions to the notice of the court as any that can be devised. I can see then no objection to the mode in which the defendants sought to rely on the want of jurisdiction in the court. Nor can I perceive any thing in the record to show that the *690 rule was not asked for in good time.- The petition and warrant were returned into the Circuit court at its May term 1851, which was the first after the issuing of the warrant; ^'whereupon, in the language of the record, 1 ‘it is ordered that this suit be docketed, and on motion of Jarrett C. Ratcliff, he is admitted a defendant in this cause with the said William Ratcliff; and for reasons appearing to the court, this cause is continued till the next term.” No statement of the case, no opinion of counsel, was filed at this or at any other term of the court. No summons was issued citing the defendants to the suit or either of them, to answer the petition; and no counsel appears to have been assigned to the petitioners. I do not deem it necessary to enquire what effect these departures from important requirements of the statute might have had on the judgment and verdict, if it was shown that the plaintiff in error had gone to trial without objecting to the jurisdiction of the court. But in the absence of a compliance on the part of the petitioners with these provisions, it can hardly be said that William Ratcliff was in any default when at the next succeeding term, the October court, he obtained the rule to show cause why the suit should not be dismissed. No summons had been executed upon him, and the first entry on the record which notices his appearance is that which records his motion for the rule.
I cannot perceive the force of the argument founded on the fact that it appears by the record that depositions had been taken, by the consent of the parties, before the May term, and between that and the October term, to be read on the trial of the cause. I know of no rule which would give to such consent the effect of controlling either of the parties in presenting the pleadings which they would otherwise be allowed to file, whether in the prosecution or the defense of their rights.
It seems to me that the objection to the jurisdiction was taken in a proper mode, and so far as William Ratcliff is concerned, .in good time; and as the motion *to dismiss the suit was founded on defects of jurisdiction not personal to him, but showing that the defendants in error had no right to institute their proceedings in the county of Cabell, that the court on the hearing of the rule ought not to have discharged it, but ought to have made it absolute, and to have dismissed the suit. And I am therefore-of opinion, without expressing any opinion on'the other causes of error assigned in the petition, to reverse the judgment, to set aside the verdict, and to dismiss the case.